# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**CAROLYN K. BETHEA,**

     **Plaintiff,**

**vs.**                    **Case No.  4:16cv335-WS/CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

     **Defendant.**

                                 /

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act (Act).  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On July 7, 2013, Plaintiff, Carolyn K. Bethea, filed an application for a period of disability and DIB and alleged disability beginning April 30, 2013, based on chronic back pain, swelling of the extremities, high blood pressure and stress; scoliosis; swelling of the feet, knees, ankles, and sometimes hands and wrists; neck and shoulder pain; sciatica; heal spurs (one removed); pre-diabetes; high stress causing previous heart catheterization and medicine; and one previous knee surgery, other knee with swelling and pain.  Tr. 73, 234.  (Citations to the record (transcript/administrative record), ECF No. 7, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.)

The application was initially denied on October 1, 2013, and upon reconsideration on January 9, 2014.  Tr. 73, 125-53.  On January 31, 2014, Plaintiff requested a hearing.  Tr. 73.  On October 11, 2015, Plaintiff's counsel submitted a prehearing memorandum with references to the record.  Tr. 354-62.  On October 28, 2015, Administrative Law Judge (ALJ) Lisa Raleigh held a hearing in Tallahassee, Florida.  Tr. 73, 89-124.  Plaintiff testified.  Tr. 56-73.  Robert B. Strader, an impartial vocational expert, testified.  Tr. 73, 119-23, 352 (Resume).  Joseph T. McGraw, an attorney, represented Plaintiff at the hearing.  Tr. 73, 158-62.

On November 24, 2015, the ALJ entered her decision and denied

Plaintiff's application for DIB concluding that Plaintiff was not disabled from

April 30, 2013, through the date of her decision.  Tr. 73-80.

On January 11, 2016, Plaintiff requested review of the ALJ's decision

and submitted a brief, Tr. 366-68 (Exhibit 24E).  Tr. 60, 68-69.  On April 12,

2016, the Appeals Council denied Plaintiff's request for review, Tr. 14-20,

stating that it had considered additional medical records: medical records

from Premier Medical Clinic (Premier) from September 16, 2015, to

October 5, 2015; a medical report from Dean C. Kramer, M.D., dated

October 22, 2015; and a medical report from Tallahassee Memorial

Hospital dated November 11, 2015.  Tr. 15, 18; 1024-34 (Exhibits 52F-54F)

and ECF No. 7-20 at 14-24 (same).  The Appeals Council also stated that it

had looked at medical records from Premier dated December 16, 2015, to

January 19, 2016 (four pages);[1] Laser Spine Institute covering treatment

from February 8, 2016, to March 8, 2016 (32 pages), Tr. 27-58; and a

medical report from Dr. Chauhan dated February 1, 2016 (six pages),

Tr. 8-13, 21-26.  Regarding the latter information, the Appeals Council

concluded: "This new information is about a later time.  Therefore, it does

---

[1]  The record includes one page of a three-page document from Premier on April 15, 2016 (Office Visit).  Tr. 1.  Page 2 of the record is an "Incision Inspection" report from the Laser Spine Institute.  Tr. 2.  Pages 3 through 7 are from patient notes from Dr. Chauhan dated March 19, 2015.  Tr. 3-7.

not affect the decision about whether you were disabled beginning on or

before November 24, 2015," the date of the ALJ's decision.  Tr. 15.  The

ALJ's decision stands as the final decision of the Commissioner.  *See* 20

C.F.R. § 404.981.

On June 6, 2016, Plaintiff filed a Complaint with this Court seeking

review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of

law, ECF Nos. 9 and 10, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this

appeal:

1. "The claimant meets the insured status requirements [for DIB] of the Social Security Act through December 31, 2017."  Tr. 75.

2. "The claimant has not engaged in substantial gainful activity since April 30, 2013, the alleged onset date."  *Id.*

3. "The claimant has the following severe impairments: degenerative disc disease, sleep-related breathing disorders, and obesity."  *Id.* The ALJ considered that Plaintiff also suffers from several non-severe impairments including a history of plantar fasciitis; a history of right knee arthroscopy prior to the alleged onset date; hypertension; extremity edema, associated with hypertension; hyperlipidemia; a thyroid disorder; and diabetes mellitus diagnosis in 2015.  Tr. 75-76.  The ALJ also considered Plaintiff's allegations of disability due in part to anxiety and depression, but considered them non-severe "singly and in combination."  Tr. 76.  The ALJ determined that the claimant has *no* limitations in performing activities of daily living and social functioning, and *mild* limitation in concentration, persistence or pace; and *no* periods of decompensation that have been of extended duration.  *Id.*

4. "[T]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 77.

5. "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except claimant can lift and carry 20 lbs. occasionally and 10 lbs. frequently.  She can sit six hours, stand six hours, and walk six hours in an eight-hour workday, and she can push and pull as much as she can lift and carry.  Claimant is able to balance frequently, but she is limited to occasional crawling, crouching, kneeling, stooping, climbing ladders, scaffolds, ramps and stairs. She can tolerate frequent work at heights; work involving moving mechanical parts; operation of a motor vehicle; and extreme heat, with these limitations attributable to sleep apnea."[2]  Tr. 77.

6. "The claimant is capable of performing past relevant work as a distribution clerk and secretary.[3]  This work does not require the performance of work-related activities precluded by the claimant's [RFC]."  Tr. 80.  The DOT defines distribution clerk (DOT No. 209.687-014) and secretary (DOT No. 243.367-014) as requiring light exertion.  *See* Tr. 120.  The past work as a distribution clerk is described in the DOT (DOT No. 243.367-014) as a "MAIL HANDLER (government ser.) alternate titles: distribution clerk" and as skilled light work, with a Specific Vocational Preparation (SVP) level of 4.  DOT No. 243.367-014 refers to "POST-OFFICE CLERK (government ser.) alternate titles: postal clerk," not secretary per se.  The DOT describes this particular work as skilled light work with a SVP of 4.  *See* Tr. 120.  The ALJ noted that the vocational

---

[2]  "Occasionally" means: "activity or condition exists up to 1/3 of the time." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § IV Physical Demands-Strength Rating.  "Frequently" means: "activity or condition exists from 1/3 to 2/3 of the time."  *Id.*

[3]  The ALJ's reference to "secretary" appears to be a clerical error as noted by Plaintiff.  ECF No. 9 at 9-10.  Based on the testimony of the vocational expert, it appears the ALJ meant distribution clerk and mail clerk.  *Id.*; *see* Tr. 102.  Plaintiff worked for the U.S. Postal Service for 13 years from 2000 to 2013.  Tr. 93, 218-21, 225. Plaintiff's secretarial work ended more than 15 years before the ALJ's hearing and decision.  Tr. 80, 120, 225.

expert testified "that an individual with the claimant's [RFC] could return to the above past relevant work." Tr. 80, 120-21. The ALJ further determined that "[i]n comparing the claimant's [RFC] with the physical and mental demands of this work, I find that the claimant is able to perform it as generally performed."[4] *Id.* The ALJ did not make a determination at step 5 of the sequential evaluation process. *Id.*

7. "The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2013, through the date of [the ALJ's] decision." *Id.*

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The

---

[4] In part, "[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, quantity of material to be produced." 20 C.F.R. § 404.1568(c). An SVP of 4 means "[o]ver 3 months up to and including 6 months." DOT (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. Skilled work corresponds to an SVP of three and four. Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000). In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see* DOT (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § IV, Physical Demands-Strength Rating (Strength).

Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. Moore, 405 F.3d at 1211.[5]

The burden is on the claimant to prove that he is disabled. Bell v. Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525, 404.1526); Wilkinson v. Bowen, 847 F.2d 660, 663 (11th Cir. 1987). "In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age,

---

[5] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status.  *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are any impairments which prevent past relevant work?[6]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If

---

[6] An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record resolving conflicts that might appear. 20 C.F.R. § 404.1527.  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole;

(4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors.  20 C.F.R. § 404.1527(b) & (c).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  "'The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.' *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis added)."  *Id.*

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor, 786 F.2d at 1053.

The ALJ may discount a treating physician's opinion report regarding an inability to work if it is unsupported by objective medical evidence and is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Stated somewhat differently, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583

(citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Further,

where a treating physician has merely made conclusory statements, the

ALJ may afford them such weight to the extent they are supported by

clinical or laboratory findings and are consistent with other evidence as to a

claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th

Cir. 1986).

Plaintiff bears the burden of proving that she is disabled, and

consequently, is responsible for producing evidence in support of her claim.

*See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## IV.  Plaintiff's Age, Education, and Work Experience

Plaintiff was 56 years old, a person of advanced age (age 55 or older)

on the alleged disability onset date and 58 years old on the date of the

ALJ's decision. Tr. 70, 73, 223; *see* 20 C.F.R. § 404.1563(e) (person of

advanced age).  Plaintiff has a high school education and prior work

experience as a distribution clerk, mail clerk, and secretary.  Tr. 93-105,

120, 225, 235-36, 273.  She alleged disability based on chronic back pain;

swelling of her extremities; high blood pressure; stress; chronic back pain;

scoliosis; swelling of her feet, knees, ankles, hands, and wrists; neck and

shoulder pain; pre-diabetes; sciatica; heel spurs; and a previous knee

surgery.  Tr. 234.

## V. Legal Analysis

### The ALJ and the Appeals Council did not err when denying Plaintiff's application for Social Security benefits.

#### 1.

Plaintiff argues the ALJ erred at step two of the sequential evaluation process when she determined that Plaintiff's reported left knee impairments and left ventricular diastolic dysfunction were not severe impairments.[7] ECF No. 9 at 11-13.

At step two, the ALJ determined that Plaintiff had several severe impairments: degenerative disc disease, sleep-related breathing disorders, and obesity.  Tr. 75.  The ALJ considered that Plaintiff also suffers from several non-severe impairments including a history of plantar fasciitis; a history of right knee arthroscopy prior to the alleged onset date; hypertension; extremity edema, associated with hypertension; hyperlipidemia; a thyroid disorder; and diabetes mellitus diagnosis in 2015. Tr. 75-76.  The ALJ also considered Plaintiff's allegations of disability due in part to anxiety and depression, but considered them non-severe "singly and in combination."  Tr. 76.

---

[7]  In a pre-hearing memorandum, Plaintiff's counsel apprised the ALJ of Plaintiff's "[h]istory of left knee Grade II signal change" and "[g]rade I left ventricular diastolic dysfunction."  Tr. 355; *see* Tr. 357-58.

At step two, the ALJ ultimately determined that Plaintiff has *no* limitations in performing activities of daily living and social functioning, and *mild* limitation in concentration, persistence or pace; and *no* periods of decompensation that have been of extended duration.  *Id.*  *See* 20 C.F.R. § 404.1520a(d)(1).[8]  The ALJ did not address Plaintiff's claim that her reported left knee impairments and left ventricular diastolic dysfunction were severe impairments.

At step two, the issue is whether the claimant has shown that he or she has a condition that has more than "a minimal effect on her ability to: walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  To be considered "severe," a medical condition must constitute more than a "deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  "[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'"  Parker v. Bowen, 793

---

[8]  The ALJ correctly stated that the limitations identified in the "paragraph B" criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  Tr. 77.

F.2d 1177, 1181 (11th Cir. 1986), citing <u>Brady v. Heckler</u>, 724 F.2d 914,

920 (11th Cir. 1984), <u>Edwards v. Heckler</u>, 736 F.2d 625, 630 (11th Cir.

1984), and <u>Flynn</u>, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It

allows only claims based on the most trivial impairments to be rejected.

The claimant's burden at step two is mild. . . .Claimant need show only that

her impairment is not so slight and its effect is not so minimal."  <u>McDaniel v.</u>

<u>Bowen</u>, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying <u>Brady</u>).  It has

been said that step two of the sequential analysis may do no more than

screen out de minimus claims.  <u>Stratton v. Bowen</u>, 827 F.2d 1447, 1453

(11th Cir. 1987).[9]

At step two only, the ALJ noted that Plaintiff suffers from several non-

severe impairments including her "history of right knee arthroscopic prior to

the alleged onset date" and further noted, however, that "there is no

indication that surgery did not improve her knee issues and as such, the

record fails to establish a severe knee impairment (see Exhibit 8F)."  Tr. 75.

In her decision, the ALJ did not specifically discuss Plaintiff's reports of

problems with her *left* knee.

---

[9]  The ALJ is not required, however, to identify all of the impairments that should
be considered severe.  *See* <u>Heatly v. Comm'r of Soc. Sec.</u>, 382 F. App'x 823, 825 (11th
Cir. 2010) (unpublished); *see also* <u>Mariarz v. Sec'y of Health & Human Servs.</u>, 837 F.2d
240, 244 (6th Cir. 1987).

On October 6, 2010, Edward M. Jaffe, M.D., performed a right knee arthroscopy with patellofemoral chondroplasties.  Tr. 584.  Plaintiff had reported a six-week history of right knee pain and a pre-operative evaluation, including an MRI, was consistent with a medial meniscal tear.  *Id.*  Dr. Jaffe's findings included no evidence of a medial meniscal tear; a mild medial compartment DJD; and extensive patellofemoral compartment articular cartilage abnormalities as described.  Tr. 586.

On May 27, 2011, Plaintiff saw Dr. Jaffe and reported a new problem: "a three-month history of left knee pain."[10]  Tr. 549.  There was no reported history of associated injury.  She had difficulty with knee flexion and with kneeling and believed there had been some swelling in the knee.  She had a cortisone injection from her primary care provider and this helped for several days.  She also reported taking some NSAID samples which helped temporarily.  A physical examination revealed that Plaintiff walked with a slight limp on the left; her postural alignment was normal; her range of motion of the left knee was zero degrees of extension to 125 degrees of

---

[10]  A May 27, 2011, patient note from Interventional Medical Associates, P.A., indicates that Plaintiff complained of pain in her left knee traveling to side and front.  Tr. 427.  Lying down and standing a little make the symptoms better, whereas long periods of standing and bending the knee make it worse.  The symptoms started two to three months ago and was treated by Randy Hearne, ARNP, who noted that she had been treated with elevation, pain meds, and ice.  *Id.*  A March 5, 2012, patient note does not mention knee pain.  Tr. 424.  Rather, lower back, leg, and foot pain were noted as worse, mainly right.  *Id.*  MRIs and x-rays are noted.  *Id.*

flexion; her knee was stable; there was no effusion or popliteal fullness; there was tenderness at the medial joint line and some tenderness laterally, more in the region of the fibular head than at the lateral joint line; and no overlying skin abnormalities.  *Id.*  X-rays indicated a well-maintained articular cartilage height; no peripheral osteophytes; normal alignment; and no definite evidence of an effusion on the lateral view.  *Id.*  Dr. Jaffe noted there was a "suggestion possibly of a small effusion."  He ordered an MRI to "rule out [a] medial meniscal tear."  *Id.*

On June 2, 2011, Plaintiff had an MRI of her left knee without contrast having complained of left knee pain.  Tr. 578, 669.  The impressions included Grade II signal changes in the posterior horn of each meniscus, greater in the medial meniscus, but no definite Grade III signal; degenerative changes in the patellofemoral compartment, Grade II chondromalacia in the medial patella and Grade IV chondromalacia with subchondral cystic change in the lower medial trochlea; and small joint effusion.  Tr. 578.  On June 9, 2011, Plaintiff reported, by telephone, to Dr. Jaffe that "she still has some left knee pain, mostly with getting up and down."  Tr. 548.  Dr. Jaffe discussed treatment options with Plaintiff and he indicated he would set her up for outpatient physical therapy.  *Id.*

On August 31, 2011, Plaintiff saw Dr. Jaffe for a follow-up after the MRI of her left knee.  Tr. 545.  Although Plaintiff reported her left knee pain was not be relieved through injections and oral medication, Dr. Jaffe noted Plaintiff's "satisfactory gait pattern," normal alignment of the left knee, no knee effusion, and range of motion was zero degrees of extension and 125 degrees of flexion.  There was mild patellofemoral crepitus, but no joint line tenderness, and the knee was stable.  *Id.*  Dr. Jaffe then noted Plaintiff's MRI indicated:

> no evidence of meniscal tears.  Collateral and cruciate ligaments are intact.  There is focal grade 3 chondromalacia on the medial facet of the patella and grade 4 chondromalacia with subchondral cyst formation on the inferior aspect of the femoral trochlea.  There is a small joint effusion and no popliteal cyst formation.

*Id*.  Dr. Jaffe gave Plaintiff another injection, which she tolerated well.  *Id*. He advised Plaintiff to ice her left knee, work on a home exercise program, make efforts at weight loss, and to return if symptoms did not improve.  *Id*.

On February 21, 2012, Plaintiff presented to Premier with low back and left knee pain and was seen by Mr. Hearne.  Tr. 603; *see supra* at n.10.  The results of a physical examination under muscular-skeletal indicated: "Has point tenderness and pain in the low back with extension through the right leg.  Has some mild straight leg tenderness.  Some mild spasms.  Mild swelling left knee and lateral tenderness but no evidence of

laxity.  Ambulates without assistance.  No obvious joint deformities." *Id.*

Mr. Hearne opined that Plaintiff's left knee pain could be an exacerbating

factor from Plaintiff's lower back problems versus individual problems in the

knee.  *Id.*  He wanted to wait to see how Plaintiff responded to an injection

and medications in order to make further adjustments based on clinical

outcomes at that time.[11]  *Id.*

On December 23, 2014, Plaintiff followed-up with Mr. Hearne.

Tr. 946 (Exhibit 41F); *see* Tr. 911.  Under musculoskeletal, it is noted that

Plaintiff's extremities appeared grossly normal visually with good motor

tone; 5/5+ strength bilaterally; Plaintiff moves all to commands and range of

motion appeared at baseline.  Tr. 946.  Under neurological, Plaintiff

appeared grossly intact on observation, alert and oriented x3; sensation to

---

[11]  Patient records from Premier from June 22, 2012, through March 19, 2013,
note Plaintiff's complaints, including swelling ankles, right wrist pain, low back pain; a
rash; no taste or smell; hip pain; and hot flashes.  Tr. 591-600.  There is no mention of
left knee pain.  *Id.*  Plaintiff had followed-up with Donna Mills, FNP-BC.  *Id.*  Plaintiff
followed-up again with Ms. Mills on December 30, 2013, complaining of a cough,
congestion, and headache.  Tr. 880.  A brief review of systems revealed, in part, no
back pain and no arthralgia.  Tr. 881.  A brief physical revealed no clubbing or cyanosis;
edema bilateral ankles; peripheral pulses palpable; pain to palpation and with all
movements of right wrist; and no edema of right wrist.  She was alert and oriented x4
with normal affect.  *Id.*  On October 14, 2014, Plaintiff met with Mr. Hearne.  Tr. 918.
Plaintiff reported her pain was "a little different now.  Hurting all the time and now
rotates around the low abdomen/pelvis area.  Has one ovary on that side.  States
standing seems to make pain worse than it [sic] sitting or standing."  Tr. 918.  Plaintiff
ambulated without assistance; there were no obvious joint deformities; 5/5 strength to
all extremities; no clubbing, cyanosis, or edema; spine appears normal; tenderness low
lumbosacral area, tight sided; 6-7/10 with Advil.  *Id.*  Low back pain with right groin
involvement versus ovarian pathology was noted and an ultra sound of the pelvis was to
be scheduled and medications continued.  *Id.*

touch appeared grossly normal; simple balance appeared intact on observation; Plaintiff responded appropriately to simple questions and tasks; her short and long-term memory appeared intact; and there was no obvious sensory or motor loss.  *Id.*  The assessment was low back pain exacerbated with holiday shopping.  She was given Decadron for acute relief and Toradol and Plaintiff was to try Tramadol ER and Gabapentin 300 mg QHS.  *Id.*

On April 24, 2015, Plaintiff had an office visit at Premier and was examined by David Burrows, NP.  Tr. 943.  In part, Mr. Burrows observed that Plaintiff's extremities appeared to be normal with good motor coordination and strength; no obvious joint arrhythmia, tenderness or swelling observed; and no edema, cyanosis, or no clubbing.  *Id.*  He further observed that Plaintiff had lower back pain from coughing and a history of back pain and treatment and spinal examination.  *Id.*  No spinal deformity or mis-alignment was observed; spinal muscles had no tenderness; normal range of motion, and no obvious spasm.  *Id.*  The assessment was sinusitis pharyngitis with cough and back pain from excessive cough.  *Id.*

Plaintiff refers to a treatment note from Frederick Corpuz, M.D., with Cardinal Healthcare, PPLC, from August 30, 2012, wherein Dr. Corpuz under "CC:" states: "back pain (not getting better) shoulders, legs, knees,

ankles." Tr. 631. Other notations are mostly illegible. *Id.* Under review of

systems, the box is checked yes under musculoskeletal: joint swelling

and/or pain. *Id.* Dr. Corpuz did not add "knees" under the "CC:" category

on his April 2, 2013, patient notes. Tr. 630. On January 7, 2014,

Dr. Corpuz wrote a letter to Plaintiff's counsel stating that he had been

following Plaintiff since September 29, 2006, "for generalized degenerative

joint disease and spinal stenosis among other things." Tr. 840. Dr. Corpuz

did not mention treating Plaintiff for problems with her knees.[12] *Id.*

    Plaintiff further notes that "[t]he credibility of the knee pain is not

diminished by the fact that [Plaintiff] has not complained of left knee

problems since stopping work. Since then, she is 'in the recliner

somewhere between five and eight hours a day at least . . . it's how I

control the pain,'" Tr. 109. ECF No. 9 at 19. During the hearing before the

ALJ, Plaintiff did not mention any knee pain. Tr. 93-124.

    Plaintiff has not established her left knee pain as a severe

impairment. The lack of objective medical evidence undermines her claim

of disability and provide substantial evidence in support of the ALJ's implicit

---

[12] The ALJ "gave only partial weight to Dr. Corpuz's opinion at Exhibit 29F [Tr. 840] because he lacks program knowledge related to disability." Tr. 79.

decision not to consider Plaintiff's problems with her left knee to be a severe impairment at step two.

Next, Plaintiff argues the ALJ erred in not finding her left ventricular diastolic dysfunction a severe impairment.  ECF No. 9 at 19.  Plaintiff contends that this impairment, in combination with other impairments, limits her to less than six hours a day of standing and walking.  *Id.*  Dr. Corpuz noted the impairment during two appointments in January and June 2014, highlighting it was a contributing factor to Plaintiff's dyspnea.  Tr. 847-48, 924.  Dr. Corpuz did not note, however, any functional limitations due to this condition and in June 2014, stated that he would follow-up with Plaintiff in six months and no further cardiac work-up was indicated.  Tr. 924.

The ALJ considered Plaintiff's dyspnea and found there were no treatment records reflecting continued complaints by Plaintiff regarding her dyspnea.  Tr. 78.  The ALJ necessarily considered Plaintiff's left ventricular diastolic dysfunction as part of her consideration of Plaintiff's dyspnea.  *See* Davis v. Barnhart, 153 F. App'x 569, 572 (11th Cir. 2005) (unpublished) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself").  No error has been shown.

Plaintiff also argues that the ALJ erred because she did not consider Plaintiff's impairments in combination.  *See* ECF No. 9 at 19.  The ALJ's decision reflects that she properly considered Plaintiff's impairments as a whole when evaluating her claim.  Tr. 70-80.  The ALJ determined at step three that Plaintiff did not have "an impairment or combination of impairments" that met or equaled a listing impairment.  Tr. 77.  The ALJ further stated that she "considered all symptoms" in assessing Plaintiff's RFC and specifically mentioned Plaintiff's dyspnea and "knee issues" in her discussion of the evidence.  Tr. 75, 77-78.  Substantial evidence supports the ALJ's assessment of Plaintiff's impairments.

2.

Plaintiff argues that in determining her RFC, the ALJ did not properly consider all of the evidence, including the medical opinion of Dr. Corpuz.  ECF No. 9 at 20-27; *see supra* at n.12 (ALJ's assessment of Dr. Corpuz's opinions).

Dr. Corpuz treated Plaintiff since September 29, 2006.  Tr. 840.  His treatment notes deal with "generalized degenerative joint disease and spinal stenosis among other things."  *Id.*  On January 7, 2014, and in response to Plaintiff's counsel, Dr. Corpuz opined:

> Her symptoms include pain affecting her feet, hips, shoulders, and low back.  She has progressively gotten worse such that she had to

retire from post office work on 04/30/2013.  Because of her impairment noted above, it is medically necessary for Ms. Bethea to rest, recline, or lie down several times a day.

*Id*.  Dr. Corpuz did not opine how long Plaintiff could sit, stand, or walk before resting or how long she need to rest before she would be able to sit, stand, or walk again.  *Id*.

The ALJ assessed Plaintiff's RFC during the relevant period from her alleged onset date of April 30, 2013, to the date of the ALJ decision. Tr. 73, 75, 77-80, 223.  In weighing a medical source's opinion, the ALJ considers factors such as the evidence to support the opinion, the consistency of the opinion with the record as a whole, and other factors. *See* 20 C.F.R § 404.1527(c)(2), (4).  Generally, a treating physician's opinion is entitled to more weight and the ALJ must "give good reasons" for rejecting it.  *See* 20 C.F.R § 404.1527(c)(2).  An ALJ may discount the opinion of a physician, including a treating physician, when not supported by objective medical signs and diagnostic testing or inconsistent with the record as a whole.  *Id.;* Crawford, 363 F.3d at 1159-69.

The ALJ accorded Dr. Corpuz's opinion "partial weight," in part, because Plaintiff "performed work at the medium exertional level despite her impairments (including pain) and given the MRI results, [the ALJ did not] feel she needs to lay down several times a day, although her

impairments warrant a reduction to light exertion work."  Tr. 79; *see supra* at n.12.

Dr. Corpuz's letter does not reference which objective medical evidence he used as a basis for his opinion, which suggests that his opinion was adopted from Plaintiff's subjective complaints.  It would have been helpful if Dr. Corpuz had referenced specific medical signs and laboratory findings to support his January 2014 opinion.  *See* 20 C.F.R. § 404.1527(c)(3).

It also appears that the objective medical evidence does not support Plaintiff's claim that she needs to spend between five and eight hours a day in her recliner.  ECF No. 9 at 18-19.  Rather, in March 2013, during an office visit at Premier with Ms. Mills, Plaintiff presented with complaints of swelling ankles, right wrist pain, and low back pain.  Tr. 591.  Plaintiff was "instructed to elevate legs when able to do so," with no written instructions about how long or how often.  Tr. 592.

On May 27, 2011, Plaintiff saw Dr. Jaffe for a "three-month history of left knee pain."  Tr. 549.  Although Plaintiff alleged difficulty with knee flexion and kneeling, she also reported that NSAID samples temporarily relieved the pain.  *Id.*  Upon physical examination, Dr. Jaffe noted a slight limp on her left knee; normal postural alignment; no knee effusion or popliteal fullness, and range of motion of zero degrees of the left knee with

zero degrees of extension and 125 degrees of flexion.  Although Dr. Jaffe

noticed tenderness at the medial joint line and greater tenderness at the

fibular head, he indicated no overlying skin abnormalities.  *Id.*  Upon x-ray

examination, Dr. Jaffe noted a well-maintained articular cartilage height, no

peripheral osteophytes; normal alignment; bones were well mineralized;

and no definite evidence of an effusion on the lateral view.  Dr. Jaffe did

note there was a "suggestion possibly of a small effusion, and considered

an MRI "rule out [a] medial meniscal tear."  Plaintiff was prescribed Ultram

and Advil as needed with standard warnings.  *Id.*

The results of the August 2011 MRI of Plaintiff's left knee are noted

herein.  *See supra* at 19.  In February 2012, Plaintiff treated with

Mr. Hearne and those results are also reported herein.  *See supra* at 19-20.

Plaintiff cited several reasons the ALJ improperly rejected

Dr. Corpuz's opinion.  *See* ECF No. 9 at 20-27.  Each argument is rejected.

Plaintiff argues that the ALJ should not have accorded great weight to

Efren Baltazar, M.D's, January 8, 2014, opinion.  ECF No. 9 at 22.

Dr. Baltazar is a non-examining State agency medical consultant who

provided a physical RFC assessment as part of the Agency's

reconsideration of Plaintiff's application.  Tr. 149-51.  Dr. Baltazar

considered Plaintiff's medical record as of January 2014, which included

Dr. Sofi's September 24, 2013, consultative examination results.[13]  Tr. 150;
*see* Tr. 785-88.  Dr. Balthazar opined Plaintiff was capable of a reduced
range of light level work.  Tr. 149-50.  Although Dr. Balthazar did not
examine Plaintiff and review the entire record before the ALJ, the ALJ
reviewed the relevant evidence and found that Dr. Balthazar's opinion was
supported by the record as a whole.  Tr. 79; *see* 20 C.F.R.
§ 404.1527(c)(3), (c)(4).

The second and third arguments are related.  *See* ECF No. 9 at 23-
24.  As noted above, Dr. Corpuz limited Plaintiff to work of a lesser
exertional level than she had been shown to perform while suffering from
her alleged impairments and the pain associated with them.  Plaintiff

---

[13]  On September 24, 2013, Plaintiff was referred to and examined by Abdul Sofi,
M.D., of Premier, for a Social Security disability consultative examination.  Tr. 783-88
(Exhibit 21).  Regarding a review of systems, Plaintiff reported "[s]ome numbness and
tingling in the lower extremities off and on.  No new weakness.  No seizures, syncope or
visual symptoms.  No hearing loss."  Tr. 786.  A physical examination was generally
normal as Plaintiff's movements of her upper and lower extremities were within normal
limits; Plaintiff had normal mobility of the C and L spine, but with pain; and there was
paraspinal muscle spasm at both places.  Tr. 788.  From a neurological standpoint,
Plaintiff was awake and oriented x3; she had Grade 5 power in BUE with Grade 5 hand
grip on both sides; Grade 5 power in BLE; her gait was normal and she did not use a
cane or walker.  *Id.*  Dr. Sofi's assessments were lower back pain, scoliosis,
radiculopathy, hypothyroidism, and HTN.  *Id.*  Dr. Sofi opined that Plaintiff "will not be
able to do any kind of job where there is a lot of physical work."  *Id.*  The ALJ gave
"partial weight" to Dr. Sofi's opinion because he was not a treating physician and his
"opinion does not include a function-by-function analysis of claimant's ability to perform
work-related tasks" and only "insofar as it supports a finding claimant is limited to light
work as detailed above."  Tr. 79; *see* Tr. 78 referring to Exhibit 21F (and Exhibit 41F)
and Dr. Sofi's findings regarding Plaintiff's full spinal range (despite discomfort on one
occasion), normal strength in all extremities, and normal gait.

argues that her condition has progressively worsened over time, although she does not cite any treating or non-treating doctor that opined similar functional limitations to Dr. Corpuz before and during the relevant period. ECF No. 9 at 23-24.  No error has been shown.

3.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  ECF No. 9 at 27-28.  Plaintiff also argues, as part of the prior but related point, that the ALJ has no medical degree and may not reject Dr. Corpuz's opinion based on an analysis of the record.  As noted above, the ALJ is responsible for determining Plaintiff's RFC.  *See supra* at n.6.  Substantial evidence supports the ALJ's RFC determination.

Plaintiff argues that the ALJ disregarded and did not fairly consider several of her impairments including her left knee impairment and diastolic dysfunction (discussed herein); her uncontrolled diabetes; and spinal impairments.  ECF No. 9 at 27-28.

The ALJ properly considered Plaintiff's spinal impairments and diabetes.  Tr. 76.  Plaintiff argues the record does not establish Plaintiff's diabetes was under control.  ECF No. 9 at 27-28.  The ALJ considered, however, Plaintiff's 2015 diagnosis for diabetes mellitus and found it to be non-severe.  Further, the ALJ highlighted there was no evidence of

Case 4:16-cv-00335-WS-CAS   Document 11   Filed 12/20/16   Page 30 of 44

Page **30** of **44**

neuropathy and the record does not indicate "any renal disease, diabetic

retinopathy, or other end-organ damage associated with this condition."

Tr. 76.  Although Plaintiff argues the ALJ determined that her diabetes was

controlled because she allegedly had to stop taking the medication for

giving her "chronic digestive problems," the record does not indicate

Plaintiff's diabetes was uncontrolled as a result.  Substantial evidence from

the record supports the ALJ's findings regarding Plaintiff's diabetes.

For example, on February 2014, Gagneet Chauhan, M.D., noted that

Plaintiff was "not diabetic (yet)."  Tr. 895.  Her A1C was higher than six

months ago; she gained weight since her last visit and her diet had not

been the best and exercise was limited due to back, knee, and leg pain.  *Id*.

Dr. Chauhan discussed the "progression of prediabetes to diabetes" and

stressed, in part, "lifestyle modifications."  Tr. 897.   At this and subsequent

appointments, Dr. Chauhan "stressed" the importance of healthy eating

habits and regular exercise.  Tr. 893.  At a follow-up appointment on

September 22, 2014, Dr. Chauhan noted that Plaintiff's diabetes laboratory

work was improved and "seems to be doing well with current dose of

metformin."  Tr. 889.  By March 19, 2015, Plaintiff's FBS on recent labs was

better, although her A1C had increased.  Tr. 3.  An increase in Metformin

was recommended and she was encouraged to continue healthy activity

and lifestyle changes.  Tr. 6.  As of her next visit with Dr. Chauhan on February 1, 2016, her A1C had improved.  She was taking Metformin, but was advised to stop because it was causing her "bad diarrhea," which had improved since she stopped taking Metformin in September-October 2015. Tr. 9.  Lab results showed no neuropathy, retinopathy, paresthesias, or coronary artery disease.  *Id.*

By August 24, 2015, Plaintiff reported a change in bowel function to Dean C. Kramer, M.D.  Tr. 959.  (She was last seen in that office in 2011. *Id.*)  Dr. Kramer noted that Plaintiff is a non-insulin diabetic who is taking Metformin.  Tr. 960.  Although he advised her to stop taking Metformin, Dr. Kramer opined that the "condition may be caused by [a] disruption of the homeostatic mechanism controlling bile acid synthesis."  Tr. 964. Dr. Kramer did not prescribe additional medication for diabetes.  He recommended that Plaintiff check her blood sugar daily and call him if it exceeded 200 mg\dL.[14]  *Id.*

On October 22, 2015, Dr. Kramer noted Plaintiff's bowel function returned to normal after she stopped taking Metformin.  Tr. 1028.

---

[14]  A review of systems indicated, in part, that Plaintiff denied joint swelling or pain.  Tr. 961 (musculoskeletal).

Dr. Kramer advised Plaintiff to contact her primary care physician to regulate her blood sugar, noting that her blood sugar ranged between 118 mg/dL and 184 mg/dL.  Her back showed no deformity and "no point tenderness."  She had no cyanosis, clubbing, or edema in her extremities. She was alert, oriented with adequate recall; ambulation, balance, and coordination appeared normal.  Tr. 1030.

The evidence cited by Plaintiff does not indicate her diabetes worsened.  Plaintiff did not establish that her diabetes was uncontrolled and the record provides substantial evidence of the ALJ's finding that Plaintiff's diabetes was a non-severe impairment.  Tr. 76.

The ALJ set forth Plaintiff's abilities and limitations in her decision and found Plaintiff capable of a reduced range of light work.  Substantial evidence supports the ALJ's determination.  Tr. 70-80.

4.

Plaintiff argues that the ALJ erred when she determined that Plaintiff's statements about her symptoms were not entirely credible.  ECF No. 9 at 23-27.  Substantial evidence supports the ALJ's credibility determinations of Plaintiff.  *See* Tr. 76-77, 79.

The credibility of the claimant's testimony must be considered in determining if the underlying medical condition is of a severity which can

reasonably be expected to produce the alleged pain.  Lamb v. Bowen, 847

F.2d 698, 702 (11th Cir. 1988); see Moore v. Barnhart, 405 F.3d at 1212

("credibility determinations are the province of the ALJ").  If an ALJ refuses

to credit subjective pain testimony where such testimony is critical, the ALJ

must articulate specific reasons for questioning the claimant's credibility.

See Wilson, 284 F.3d at1225.  Failure to articulate the reasons for

discrediting subjective testimony requires, as a matter of law, that the

testimony be accepted as true.  Id.  On the other hand, "[a] clearly

articulated finding with substantial supporting evidence in the record will not

be disturbed by a reviewing court."  Foote v. Chater, 67 F.3d 1553, 1562

(11th Cir. 1995).

The ALJ considered Plaintiff's and her daughter's statements about

Plaintiff's symptoms and the limitations they allegedly caused and

concluded they were "simply not consistent with the preponderance of the

opinions and observations by medical professionals in this case."  Tr. 79-

80.  The ALJ considered Plaintiff's record and nature of treatment before

finding Plaintiff capable of a reduced range of light work.  Tr. 77-80.

The objective evidence from the record is not consistent with

Plaintiff's subjective complaints of disabling pain.  Plaintiff did not establish

additional functional limitations that preclude her from the RFC found by the

ALJ.  Rather, the ALJ considered Plaintiff's physical impairments and properly accounted for functional limitations in the RFC.

Further, Plaintiff's lack of treatment for several impairments during the relevant period provides additional evidence that her condition was not as limiting as she alleged.  Plaintiff did not complain about left knee pain since she stopped working.  As noted above, Plaintiff's left knee pain was treated conservatively by elevating her leg, applying ice, taking pain medications, and having injections for more than a year and a half before her alleged onset date.  Tr. 427, 545, 549, 578, 603-04, 631.  None of Plaintiff's doctors opined that she was so limited by her impairments that she could not exercise.  Tr. 432, 545, 683, 694, 844, 893.  Plaintiff was advised to exercise and diet in order to control her symptoms.  Tr. 592, 683, 685, 694, 893.  When Plaintiff dieted, she lost six pounds in two weeks.  Tr. 692.  She acknowledged, however, that she did not maintain her diet and gained almost 30 pounds between 2009 and 2013.  Tr. 591.

Plaintiff's activities of daily living indicate her left knee pain was not as limiting as she alleged.  Although not dispositive, the claimant's activities may show that her symptoms are not as limiting as alleged.  *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441

("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  Plaintiff watched her grandchild three to four nights per week, though she alleged she cannot pick up her grandchild.  Tr. 113-16, 284, 345.  Plaintiff was able to drive, Tr. 267, shop for groceries, *id.*, cook complete meals, Tr. 266, perform light household chores, Tr. 266-67, garden, Tr. 265, attend church, Tr. 268, and go to family cookouts, *id.*  Plaintiff also reported doing yard work as late as June 2013.  Tr. 683.

The ALJ evaluated Plaintiff's subjective allegations of pain and limitations under the proper legal standard and provided specific reasons for discounting her subjective complaints of disabling pain.  Tr. 77-88.  The ALJ considered objective evidence of Plaintiff's impairments and concluded the evidence did not support Plaintiff's complaints.  *Id.*

The ALJ properly rejected reports from Plaintiff's daughter.  An ALJ considers testimony of a claimant's third-party witness in accordance with SSR 06-3p, SSR LEXIS 5 (Aug. 9, 2006).  *See* Tr. 79-80.  SSR 06-3p, cited by the ALJ, clarified how SSA considers opinions from sources who are not what the agency terms "acceptable medical sources."  The SSA separates information sources into two main groups: "acceptable medical sources" and "other sources."  It then divides "other sources" into two groups:

medical sources and non-medical sources.  20 C.F.R. § 404.1502.

Acceptable medical sources include licensed physicians (medical or

osteopathic doctors) and licensed or certified psychologists.  20 C.F.R.

§ 404.1513(a).  In the category of "other sources," again, divided into two

subgroups, "medical sources" include nurse practitioners, physician

assistants, licensed clinical social workers, naturopaths, chiropractors,

audiologists, and therapists.  "Non-medical sources" include school

teachers and counselors, public and private social welfare agency

personnel, rehabilitation counselors, spouses, parents and other

caregivers, siblings, other relatives, friends, neighbors, clergy, and

employers.  20 C.F.R. § 404.1513(d).  "Information from these 'other

sources' cannot establish the existence of a medically determinable

impairment," according to SSR 06-3p.  Sloan v. Astrue, 499 F.3d 883, 888

(8th Cir. 2007).  "Instead, there must be evidence from an 'acceptable

medical source' for this purpose.  However, information from such 'other

sources' may be based on special knowledge of the individual and may

provide insight into the severity of the impairment(s) and how it affects the

individual's ability to function."  Id. quoting SSR 06-3p, 2006 SSR LEXIS 5,

at *5.

The ALJ summarized the testimony of Plaintiff's daughter and determined she could not give her statements significant weight because Plaintiff's daughter was "not medically trained" and her statements were not consistent with the medical evidence. Tr. 79-80. Like Plaintiff's subjective complaints of disabling pain and other symptoms, the testimony of Plaintiff's daughter is contrary to the preponderance of the evidence as noted by the ALJ. Plaintiff did not show that the testimony of her daughter added noteworthy evidence to the record. As a result, the ALJ did not need to further discuss or explain why she discounted the statements of Plaintiff's daughter. *See* De Olazabal v. Soc. Sec. Admin., Comm'r, 579 F. App'x 827, 832 (11th Cir. 2014) (unpublished).

5.

Plaintiff argues the Appeals Council erred in not reversing the ALJ's decision based on what Plaintiff characterizes as new and material evidence submitted after the ALJ's decision. ECF No. 9 at 33-34. Substantial evidence supports the ALJ's decision and the Appeals Council's decision not to remand the case to the ALJ for further consideration.

Generally, a claimant is allowed to present new evidence at each stage of this administrative process. See 20 C.F.R. §§ 404.900(b), 416.1470(b); Ingram v. Comm'r of Soc. Admin., 496

F.3d 1253, 1261 (11th Cir. 2007).  The Appeals Council has the discretion not to review the ALJ's denial of benefits.
20 C.F.R. §§ 404.970(b), 416.1470(b).  However, the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the [ALJ] hearing decision" and must review the case "if the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record."  Id.  The new evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome."  Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987).

Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 745 (11th Cir. 2011) (unpublished).  The Flowers court also stated that "[w]hen a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence," citing Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980).  Flowers, 441 F. App'x at 745.  The court further stated that "[i]f the Appeals Council merely 'perfunctorily adhere[s]' to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and we must remand 'for a determination of [the claimant's] disability eligibility reached on the total record.'"  Id.  The court concluded that the Appeals Council did not adequately consider the claimant's new evidence.  Id.  The court, however, went forward and addressed whether there was a reasonable possibility that the claimant's new evidence would

change the ALJ's decision.  *Id.*  (The "reasonable possibility" standard is derived from Hyde v. Bowen, 823 F.2d at 459.)

On January 11, 2016, Plaintiff requested review of the ALJ's decision and submitted a brief.  Tr. 366-68 (Exhibit 24E).  Tr. 60, 68-69.  On April 12, 2016, the Appeals Council denied Plaintiff's request for review, Tr. 14-20, stating that it had considered additional medical records: medical records from Premier from September 16, 2015, to October 5, 2015; a medical report from Dr. Kramer dated October 22, 2015; and a medical report from Tallahassee Memorial Hospital dated November 11, 2015. Tr. 15, 18; 1024-34 (Exhibits 52F-54F) and ECF No. 7-20 at 14-24 (same). The Appeals Council also stated that it had looked at medical records from Premier dated December 16, 2015, to January 19, 2016 (four pages);[15] Laser Spine Institute covering treatment from February 8, 2016, to March 8, 2016 (32 pages), Tr. 27-58; and a medical report from Dr. Chauhan dated February 1, 2016 (six pages), Tr. 8-13, 21-26.  Regarding the latter information, the Appeals Council concluded: "This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before November 24, 2015" the date of the ALJ's decision.  Tr. 15.

---

[15]  *See supra* at n.1.

Plaintiff alleges the Appeals Council did not properly consider all of her new evidence including thoracic MRI scans taken on February 8, 2016; lumbar decompression procedure notes from April 2016; and follow-up treatment notes from April 16, 2016.  Tr. 1, 34-35.

Plaintiff had an MRI scan of her thoracic spine in February 8, 2016. Tr. 34-35.  The Appeals Council specifically stated that it looked at new evidence from the Laser Spine Institute, which included the results of the thoracic MRI, but found the evidence related to a later time and did not relate back to the relevant period on or before the ALJ's November 24, 2015 decision.  Tr. 15.  Plaintiff suggests that the results of this later MRI undermined the ALJ's credibility finding.  ECF No. 9 at 34.  She has not shown, however, additional functional limitations during the relevant period as a result of her thoracic MRI findings.  ECF No. 9 at 33-34.  The evidence does not contradict the ALJ's findings that Plaintiff was capable of working at a reduced range of light work during the relevant period.  As a result, Plaintiff did not show that the thoracic MRI results undermine the substantial evidence supporting the ALJ's decision.

On January 27, 2016, the Appeals Council granted Plaintiff an extension of time to submit additional evidence.  Tr. 61.  *After* the Appeals Council denied review on April 12, 2016, Tr. 14, Plaintiff submitted

evidence of the lumbar compressions procedure and follow-up treatment notes.[16]  Tr. 1-2.  The Appeals Council is not required by regulation to consider Plaintiff's new additional evidence as the time to do so had expired and after the Appeals Council denied review.  *See* Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987).

Nevertheless, a sentence six remand is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."  Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); *see* Ingram, 496 F.3d at 1267.  Plaintiff must establish that the evidence is new and noncumulative; the evidence material such that a reasonable probability exists that would change the administrative result; and there was good cause for the failure to submit the evidence at the administrative level.  *See* Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).

---

[16]  On April 15, 2016, Plaintiff had an office visit with Premier.  Tr. 1.  It is noted that Plaintiff had a lumbar decompression procedure done by the Laser Spine Institute two weeks prior and Plaintiff "is feeling 'wonderful.'"  *Id.*  In part, Plaintiff had no back or neck pain and no arthralgia.  *Id.*  From a neurological standpoint, Plaintiff was alert and oriented x3; normal power in upper and lower extremities; and reflexes were present bilaterally and symmetrical.  *Id.*  Plaintiff's extremities appeared to be normal with good motor coordination and strength; and no obvious joint erythema and tenderness.  *Id.*  These references were at the end of page 1 of 3 and pages 2 and 3 are not in the record.  *Id.*

The evidence of Plaintiff's lumbar procedure and follow-up treatment in April 2016, *see supra* at n.16, is new and non-cumulative and could not reasonably be expected to change the ALJ's decision because it does not relate to the relevant period on or before November 24, 2015, the date of the ALJ's decision.  If the evidence can be perceived to show any worsening of Plaintiff's condition, any deterioration would not have been established as of the relevant time period.  *See* Falge, 150 F.3d at 1322-23.  Evidence is irrelevant and immaterial when it relates to a time period after the eligibility determination at issue.  *See* Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999).

Moreover, the ALJ's credibility analysis in November 2015 decision cannot be faulted regarding Plaintiff's conservative treatment in light of a procedure Plaintiff underwent five months after the ALJ's decision.  Tr. 1, 70.  If Plaintiff feels that her condition worsened after the date of the ALJ's decision, she may file a new application.[17]  *See* Wilson, 179 F.3d at 1279 n.5.

---

[17]  In a letter dated January 22, 2016, to the SSA, Plaintiff's counsel opted to request review of the ALJ's decision rather than file a new claim, but reserved the right to file a subsequent application.  Counsel further requested that the "letter should be construed as a protected filing date in the event [Plaintiff] may at some point in the future file a subsequent application for benefits."  Tr. 69; *see* Tr. 59 (similar letter dated Jan. 11, 2016).

This Court has reviewed the entire record and conducted a meaningful review of the evidence submitted to the Appeals Council based on the information contained in the ALJ's decision.[18]  There is no reasonable possibility that the claimant's additional evidence would have changed the ALJ's decision.  *See* Hyde v. Bowen, 823 F.2d at 459.

## VI.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for DIB be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on December 20, 2016.

**s/  Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections**

---

[18]  This is not a case where the evidence submitted to the Appeals Council was material to the extent it offered an objective medical explanation for previously unexplained subjective complaints of pain and inability to work over any identified length of time.  *See* Hyde v. Bowen, 823 F.2d at 459.

within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.